UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GARO ALEXANIAN d/b/a VET MOBILE and
COMPANION ANIMAL NETWORK, INC.,

                                Plaintiffs,

              v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY and TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,

                               Defendants.

**MEMORANDUM AND ORDER**

No. 21-CV-05427 (LDH) (TAM)

---

LaSHANN DeARCY HALL, United States District Judge:

    Garo Alexanian ("Plaintiff"), doing business as Vet Mobile and Companion Animal Network, Inc. ("CAN"),[1] brings this action against Government Employees Insurance Company ("GEICO") and Travelers Casualty Insurance Company of America ("Travelers," and together with GEICO, "Defendants") seeking a declaration that Defendants have a duty to defend and indemnify Alexanian against counterclaims filed against him in the Supreme Court of New York, Queens County. Defendants move pursuant to Rule 56 of the Federal Rule of Civil Procedure for summary judgment on Plaintiff's claims.

---

[1] Alexanian purports to proceed *pro se* in this litigation, pursuant to 28 U.S.C. § 1654. However, "lower courts have uniformly held that 28 U.S.C. § 1654 does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.'" *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Cty.*, 506 U.S. 194, 202 (1993)) (cleaned up). In its September 30, 2022 Memorandum and Order, this Court made clear that should CAN fail to obtain counsel, the Court would dismiss all claims alleged by CAN in the amended complaint. (September 30, 2022 Mem. and Order at 1, ECF No. 45.) To date, there is no counsel of record as to CAN. Accordingly, the Court dismisses all claims purportedly alleged on behalf of CAN and analyzes Defendants' motion for summary only as to Alexanian's claims, and not any claims Alexanian purports to bring on CAN's behalf.

## UNDISPUTED FACTS[2]

Alexanian is the Chairman of the Board of CAN, which is a not-for-profit corporation that provides veterinary services. (Defs.' Rule 56.1 Stmt. ("Defs.' 56.1") ¶¶ 47, 48, ECF No. 69.) Alexanian purchased and maintained a personal umbrella policy from GEICO (the "GEICO Policy") from November 30, 2018, to November 30, 2021. (Defs.' 56.1 ¶ 5.) The GEICO Policy insures against damages on behalf of the insured, including personal injury, subject to certain exclusions. (*Id.* ¶ 8.) The GEICO Policy defines "personal injury" as "mental or bodily injury, shock, sickness, disease or death including care and loss of services" or "arising out of . . . libel, slander, defamation of character . . . not arising out of any business of any insured, and not arising out of oral, written or other publication of material by or at the direction of an insured with knowledge of its falsity." (*Id.* ¶ 16.) Of particular relevance here, the GEICO Policy excludes damages "arising from . . .[a]cts committed by any *insured,* or at any *insured's* direction, with intent to cause *personal injury* or *property damage.* This exclusion does not apply to *personal injury* or *property damage* resulting from an act committed by an insured with reasonable and legally permissible force to protect persons or property from injury or damage. (*Id.* ¶ 13 (emphasis in original).)

Alexanian also purchased general liability business insurance from Travelers (the "Travelers Policy") on behalf of CAN. (*Id.* ¶ 19.) The Travelers Policy provides coverage for personal and advertising injury to CAN's executive officers and directors "with respect to their duties as [CAN's] officers or directors,". (*Id.* ¶¶ 20–21.) The Travelers Policy requires

---

[2] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Travelers to "pay those sums that [CAN] becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies[,]" and requires Travelers "to defend [CAN] against any 'suit' seeking damages for 'personal injury.'" (*Id.* ¶ 22.)  As relevant here, the Travelers Policy defines personal injury as:

> [I]njury, other than 'advertising injury' caused by . . . oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the suit is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged . . . or unreasonably places a person in a false light.

(*Id.* ¶ 23.)  The Travelers Policy excludes from coverage, however, personal injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (*Id.* ¶ 25.)

On January 15, 2021, Plaintiff filed a complaint in New York Supreme Court, Queens County against Rosa Morales, his former employee and tenant, asserting claims for back rent, property damage, and property removal.  (*Id.* ¶¶ 26, 34); *see also Garo Alexanian d/b/a Vet Mobile v. Rosa Morales a/k/a Rosa Fenty*, Index No. 700979/2021 (the "Underlying Action").  The complaint in the Underlying Action alleges that Morales rented an apartment from Plaintiff pursuant to an August 7, 2019 "Employment Contract," but stopped paying rent soon after.  (Defs.' 56.1 ¶¶ 30, 33.)

In her answer, Morales filed a counterclaim alleging that Alexanian defamed her.  (*Id.* ¶ 36.)  Specifically, Morales alleged:

> That Plaintiff and Morales are both in medical care professions.  Plaintiff made false statements to third parties including to his employees and doctors at his place of employment concerning Morales's professionalism.  On or about October 2019, Plaintiff told all of his employees and doctors that Morales is a thief, a cheat and a dishonorable person.  On or about January 2021, Plaintiff told Dr. Ashraf Hussein that Morales forged his signature and license.

3

> Plaintiff's conduct and statement constitute defamation per se against [Morales].
>
> In making such false statements, Plaintiff acted maliciously and with wanton, reckless, and willful disregard for Morales' rights with the purpose to injure Morales' reputation, professional standing and with intent to cause Morales to lose her job.
>
> Plaintiff was motivated by ill will, hatred and retaliation against Morales over various personal and professional disputes.

(Defs.' 56.1 ¶ 38 (cleaned up).)

In a Bill of Particulars in the underlying action, Morales specified that the alleged false statements Plaintiff made regarding Morales' professionalism include:

> (1) "That $50,000 raise has nothing to do with her professional ability;"
>
> (2) "That [Morales] refused to pay rent and/or was always late in payment of rent;"
>
> (3) "That [Morales] is a liar, dishonorable and a dishonest person who took advantage of Plaintiff's supposed $50,000.00 advancement;"
>
> (4) "That [Morales] was evicted and needed a place to live;"
>
> (5) "That [Morales] had no work ethic because she quitted her job in order to avoid paying rent to Plaintiff;"
>
> (6) "That [Morales] forged a doctor's license number and signature;"
>
> (7) "That [Morales] is a cheat, thief, and a dishonorable person;" and
>
> (8) "That [Morales] ransack the apartment."

(*Id.* ¶ 40.)

On March 15, 2021, GEICO declined to provide coverage for Plaintiff with respect to Morales' counterclaim for defamation, citing, in relevant part, its intentional acts exclusion. (*Id.* ¶ 50.) On April 20, 2021, Plaintiff sent a letter to GEICO requesting reconsideration of its disclaimer, which GEICO denied on May 18, 2021. (*Id.* ¶ 51–52.)

**STANDARD OF REVIEW**

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

**DISCUSSION**

"[T]he duty to defend is exceedingly broad and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Auto. Ins. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (cleaned up). It follows then "that an insurer must afford its insured a defense unless it can show that the allegations of the complaint put it solely within the policy exclusion." *Allstate Ins. v. Mugavero*, 79 N.Y.2d

5

153, 162 (1992). When an insurer claims that an exclusion applies, "it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, . . . and that they are subject to no other reasonable interpretation." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) (internal citation omitted).

Both Defendants argue that Morales' counterclaim for defamation in the Underlying Action, is excluded from coverage pursuant to each insurance company's intentional conduct exclusion clause. For its part, GEICO argues that its policy does not provide coverage for acts committed with the intent to cause personal injury, pursuant to the intentional acts exclusion clause. (Joint Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") at 3, ECF No. 68.) GEICO's policy excludes damages "arising from . . . . [a]cts committed by any insured, or at any insured's direction, with intent to cause personal injury or property damage." (Defs.' 56.1 ¶ 13.) GEICO argues that the alleged defamatory words were uttered intentionally. (Defs.' Mem. at 3.) As such, GEICO contends that Defendant intentionally defamed Morales, triggering the intentional acts exclusion in the GEICO policy. (*Id.* at 3.) Travelers joins GEICO's arguments, contending that the underlying claim is precluded under Travelers employment practices exclusion and intentional acts exclusion. (*Id.* at 5.) The Travelers Policy excludes personal injury "cause by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (Defs.' 56.1 ¶ 25.)

Courts in New York State have held that an insurer has no duty to defend or indemnify an insured against allegations that "defamatory words were uttered intentionally" if the insurer excludes intentional conduct from coverage. *See MacDonell v. OneBeacon Am. Ins.*, No. 12-CV-6258, 2013 WL 6181867, at *2 (W.D.N.Y. Nov. 25, 2013); *see also Hodgson v. United Services Auto. Assoc.*, 262 A.D.2d 359, 360, 691 N.Y.S.2d 137 (2d Dep't 1999) (finding that an

6

insurer's intentional conduct policy excluded coverage for "defamatory words [that] were uttered maliciously and with the intent to injure the plaintiff."). Indeed, the *MacDonnell* court held that an intentional conduct exclusion applies, "even where a personal umbrella policy includes defamation within the definition of 'injury,' but excludes intentional conduct from coverage." *MacDonell*, 2013 WL 6181867, at *6 (following New York Appellate Division precedent). Here, the counterclaim in the Underlying Actions alleges that Plaintiff acted "maliciously and with wanton, reckless, and willful disregard . . . with the purpose to injure." (Defs.' 56.1 ¶ 38.) Morales' counterclaim falls squarely within the framework sought to be excluded under both the GEICO and Travelers policies.

In the Bill of Particulars, Morales alleges that Plaintiff made eight defamatory statements, including that Plaintiff falsely stated that Morales forged Dr. Hussein's license number and signature. (*Id.* ¶ 40.) With respect to this statement, Plaintiff directs the Court to an affidavit by Dr. Hussein, which states "at no time did I hear Mr. Alexanian accuse Ms. Morales of forging my signature." (Pl.'s Decl. Ex. J, ECF No. 71.) According to Plaintiff, this affidavit creates a triable issue of fact as to whether the statement was made. True. However, it does not create a triable issue as to whether, the statement, if made, was intentional. Moreover, nothing about that the affidavit serves to address the seven other purported defamatory statements Morales alleges in the Underlying Action, including that Morales ransacked the apartment, that she quit her job to avoid paying rent, and that she is dishonorable and dishonest. (Defs.' 56.1 ¶ 40.) In other words, Plaintiff's reliance on Dr. Hussein's affidavit does not save Plaintiff from a finding that any of the allegedly defamatory statements fall within the intentional conduct exclusions. Accordingly, the Court finds that no genuine dispute of fact exists as to whether the intentional conduct exclusions bar coverage with respect to Defendants' duty to defend.

As a consequence of determining that Defendants have no duty to defend, the Court need not reach Plaintiff's claim for indemnification. *EAD Metallurgical, Inc. v. Aetna Cas. & Sur.*, 905 F.2d 8, 11 (2d Cir. 1990) (finding no duty to defend and declining to separately analyze the duty to indemnify because the duty to defend is broader than the duty to indemnify). Similarly, Plaintiff's breach of contract claim is based on Defendants' refusal to provide coverage in the Underlying Action. (*See* Am. Compl. ¶ 38–45, ECF No. 15.) Having found that Defendants' respective polices exclude coverage for the conduct alleged in the Underlying Action, Plaintiff's breach of contract claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
      March 29, 2024

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge